In re the Petition for **DISCIPLINARY ACTION AGAINST Paul C. PIPER, an Attorney at Law of the State of Minnesota.**

No. C8–82–1658.

Supreme Court of Minnesota.

March 13, 1990.

## ORDER

This matter comes before the court based on the findings of fact, conclusions of law, and recommendations of the referee appointed to take evidence concerning the alleged misconduct of the respondent Paul C. Piper. The referee found that respondent had committed unprofessional conduct warranting public discipline. Respondent joined the Director of the Lawyers Professional Responsibility Board in recommending to the referee that appropriate discipline pursuant to Rule 15, Rules on Lawyers Professional Responsibility, would be an indefinite suspension from the practice of law with no right to reapply for reinstatement for a minimal period of one year from the date of the suspension order. The referee recommended that this court adopt the joint recommendation of the parties.

In his findings of fact, the referee identifies three separate counts of misconduct, each of which describes violations of one or more rules of professional conduct. For count one, the referee found that, between late July and December 1988, respondent intentionally issued more than 80 checks on an account which had been closed on July 25, 1988. The checks totalled more than $10,000. Respondent issued the checks for various reasons, including to pay for furniture, to pay for rented musical equipment, and to pay for professional videotaping services. During this same period of time, respondent also used his position as an attorney to induce merchants to allow him to pay for merchandise with postdated checks instead of paying in advance or paying by credit card.

For count two, the referee found that respondent obtained services and merchandise over a period of several years by making promises to pay and thereafter, tendering insufficiently funded checks ("NSF checks") or refusing to tender payment at all. Examples of instances in which respondent obtained goods or services and failed to tender some or all of the amount he agreed to pay include an instance in which he ordered and received plants and containers from a vendor then refused to pay the vendor, and an instance in which respondent obtained and used a round trip airline ticket to the Bahamas, without paying the travel agent the full amount due for the ticket. In 1985, respondent wrote more than 31 NSF checks for a total of $2,544.36. In 1986, respondent wrote at least 6 NSF checks for a total of $543.34. In 1988, respondent wrote 28 NSF checks for a total of $939.98 before his account was closed.

For count three, the referee found that respondent entered into a contract for an advertisement in the January 1989–90 Minneapolis U.S. West Direct Yellow Pages

Directory ("Minneapolis Yellow Pages"), in which respondent listed his office address as IDS Tower, 80 South 8th Street, Minneapolis. At the time he placed the advertisement, Respondent did not have an office in the IDS Tower, nor did he have an objectively reasonable basis to believe that he would obtain an office in the IDS Tower.

Based on the above findings, the referee concluded that respondent engaged in a pattern of dishonesty in financial transactions including presenting NSF checks, making false statements, and obtaining goods and services without means or intent to pay. In addition, the referee concluded that respondent intentionally placed a false and misleading advertisement in the Minneapolis Yellow Pages Directory, and that such conduct violated Rules 7.1 and 8.4(c) of the Minnesota Rules of Professional Conduct.

The referee listed a number of potentially mitigating factors for this court's consideration. These include the fact that respondent underwent open-heart surgery in February 1985 and has been hospitalized off and on since 1985 for brief periods in connection with this condition. Also, respondent has been diagnosed as having both a manic depressive bi-polar disorder and a narcissistic personality disorder, for which he has been receiving treatment since August 1989. According to respondent's therapist, these disorders have contributed greatly to respondent's misconduct. Finally, the referee noted that respondent has cooperated with the Director's Office in the investigation of this matter and that none of respondent's clients have made a complaint about respondent to the Lawyers Professional Responsibility Board.

The Court, having considered all of the facts and circumstances surrounding this matter, the referee's findings and conclusions, the joint recommendation of the parties which was adopted by the referee, and respondent's past disciplinary history NOW ORDERS:

1. That the respondent, Paul C. Piper, is hereby indefinitely suspended from the practice of law with no right to reapply for reinstatement for a minimal period of one year from the date of this order, pursuant to Rule 15 of the Rules on Lawyers Professional Responsibility.

2. That any future reinstatement is conditioned upon:

a. A demonstration by clear and convincing evidence of respondent's psychological fitness to practice law.

b. Presentation of a documented record of financial responsibility.

c. Substantial completion of restitution to creditors.

d. Submission of a plan for complete restitution to creditors.

e. Successful completion of the Professional Responsibility portion of the Minnesota State Bar Examination.

f. Compliance with Rules 24 and 26 of the Rules on Lawyers Professional Responsibility.

3. That the respondent shall pay to the Director the sum of $750 in costs and disbursements pursuant to Rule 24, Rules on Lawyers Professional Responsibility.